**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL FRANCHISE SALES, INC., *Plaintiff*, v. HIREN PATEL; DIVINE INVESTORS, LLC; DIVINE OF PANAMA CITY, LLC; DIVINE OF DUNEDIN, LLC; DIVINE OF FLORIDA, LLC; DIVINE OF TAMPA, LLC; DIVINE OF PORT RICHEY, LLC; DIVINE OF PALM HARBOR, LLC; OM ESTATE OF FLORIDA, LLC; DIVINE OF SOUTHEAST, LLC; DIVINE OF MAINE, LLC; DIVINE OF MAIN LLC; and JONATHAN BLOB, *Defendants*. | Civil Action No. 22-2834 OPINION |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiff National Franchise Sales, Inc. ("NFS") sues Defendants for breaches of various listing agreements as well as breach of a non-disclosure agreement and tortious interference with contract as to Defendant Jonathan Blob. Currently pending before the Court is Blob's motion to dismiss Counts VII and VIII. D.E. 16. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and

---

[1] The submissions consist of Blob's motion to dismiss, D.E. 16 ("Br."); Plaintiff's opposition, D.E. 20 ("Opp."); and Blob's reply, D.E. 21 ("Reply").

L. Civ. R. 78.1(b). For the following reasons, Blob's motion is **GRANTED in part** and **DENIED in part**.

I. **BACKGROUND**[2]

"NFS is the industry leader in franchise business brokerage, having successfully assisted franchisees and franchisors in the acquisition and sale of franchise businesses for the last forty-four years." D.E. 1 ("Compl.") ¶ 1. "Pursuant to four Exclusive Listing Agreements . . . NFS served as the exclusive broker for the sale of fifty-four Kentucky Fried Chicken ("KFC") franchises." *Id.* These Exclusive Listing Agreements ("ELAs") entitled NFS to commissions if the contracting party "accepted an offer made by an NFS registered client for one or more of the subject franchises." *Id.* The parties to the ELAs are Divine Investors, LLC; Divine of Panama City, LLC; Divine of Dunedin, LLC; Divine of Florida, LLC; Divine of Tampa, LLC; Divine of Port Richey, LLC; Divine of Palm Harbor, LLC; OM Estate of Florida, LLC; Divine of Southeast, LLC; and Divine of Main LLC/Divine of Maine, LLC (collectively, "Divine Entities" and their franchises the "Divine Franchises"). Defendant Hiren Patel is alleged to be "an owner, manager, and/or agent of the Divine Entities." *Id.* ¶ 14.

"Blob was a registered client of NFS." *Id.* ¶ 50. "In or about November 2018, Blob agreed to the terms of a non-disclosure agreement with NFS" (the "NDA"). *Id.* ¶ 51. In or about July 2019, Plaintiff "sent an email blast of the listing of the Divine Franchises for sale." *Id.* ¶ 52. BlackBern Partners LLC received the email and "informed Blob of the listing, and Blob promptly

---

[2] The factual background is taken from Plaintiff's Complaint. D.E. 1. The Court also considered the Asset Purchase Agreements, D.E. 16-3, and Bills of Sale, D.E. 16-4, attached to Blob's motion because they are integral to the Complaint. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied* upon in the complaint" (emphasis in original) (citation omitted)).

contacted NFS for information." *Id.* ¶ 53.  Plaintiff discussed the opportunity to purchase the Divine Franchises with Blob, and "informed Patel that it was working with Blob concerning a potential offer for all or some of the Divine Franchises and/or some or all of the real property owned by the Divine Entities." *Id.* ¶¶ 54-55.

In October 2019, Patel told NFS to stop marketing the Divine Franchises. *Id.* ¶ 56.  NFS then supplied Patel with a "list of registered clients and explained that if any of the Divine Entities accepted an offer from any NFS registered client as to the Divine Franchises" during the following one-year period, then NFS would be entitled to the NFS Commissions as set forth in the Divine ELAs. *Id.* ¶ 57.  Blob was listed as a registered client of NFS. *Id.* ¶ 58.  Plaintiff alleges that within the next twelve months, "Patel sold all or some of the Divine Franchises and/or all or some of the real property owned by the Divine Entities to Blob." *Id.* ¶ 59.  Plaintiff contends that this entitles them to commission payments, but that they have not received the payments. *Id.* ¶ 61.

Plaintiff asserts six counts of breach of contract against the various Divine Entities.  As to Blob, Plaintiff alleges breach of the NDA because "[w]ithin one year of Blob agreeing to the terms of the Blob NDA, NFS introduced Blob to the opportunity to purchase the Divine Franchises" and Blob interfered with NFS's right to commissions under the ELAs by, "among other things, purchasing some or all of the Divine Franchises directly through the Divine Defendants rather than NFS." *Id.* ¶¶ 115-16.  Blob provided the Court with asset purchase agreements, executed in January 2020, and bills of sale, executed in February 2021, which show that Blob's formal connection to the Divine Franchises did not occur until at least January 2020. D.E. 16-3; D.E. 16-4.  Plaintiff does not contest the validity of these agreements.  Plaintiff also claims that Blob tortiously interfered with the ELAs. *Id.* ¶¶ 118-24.

## II. STANDARD OF REVIEW

Blob moves to dismiss Count VII and VIII of the Complaint—the only counts asserted against him—for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (citation omitted). If, after viewing the allegations in the complaint in the manner most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010). "[T]he defendant bears the burden of showing that the plaintiff has not stated a claim." *United*

*States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 299 n.4 (3d Cir. 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

## III.   ANALYSIS

### A.  Count VII – Breach of Contract

To state a claim for breach of contract under New Jersey law,[3] a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (citing *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).  In interpreting a contract, a court must determine the intention of the parties as revealed by the language in the agreement.  *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 65 (N.J. 2016) (citation omitted).  The plain language of the contract is ordinarily the best indicator of the parties' intent.  *Chubb Customs Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citation omitted).  An ambiguity exists when a contract term is "susceptible to at least two reasonable alternative interpretations[.]" *Id.* (citation omitted). To "discover the intention of the parties, and to determine whether a contract is ambiguous, courts may consider extrinsic evidence offered in support of conflicting interpretations." *Annese v. Bertoia Auctions & Appraisals, LLC*, No. A-2951-20, 2022 WL 1613144, at *4 (N.J. Super. Ct. App. Div. May 23, 2022) (citing *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J.

---

[3] It is unclear whether New Jersey law will ultimately govern this matter.  NFS is a California corporation, Compl. ¶ 1, Blob is a New York resident, *id.* ¶ 15, and the parties do not state where the NDA was entered into or whether the NDA has a choice of law provision.  But because the parties rely on New Jersey law, the Court will do the same for purposes of deciding this motion. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

2006)).  Relevant evidence includes "an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct."  *Conway*, 901 A.2d at 347 (internal quotations and citation omitted).  Where "the contested provisions fall in that gray area, dismissal or summary judgment is improper."  *Seaport Inlet Marina, LLC v. Connell*, No. 17-1908, 2017 WL 3981128, at *6 (D.N.J. Sept. 11, 2017) (internal quotation and citation omitted); *see also Annese*, 2022 WL 1613144, at *4 ("Resolution of ambiguity, if found, is a fact issue." (citation omitted)).

Here, the parties focus on the following section of Blob's NDA, which states that

> should [Blob] or any person acting directly or indirectly for Buyer on Buyer's behalf, purchase, possess, lease, rent, obtain an option for, or gain any interest in, become a manager of, or become connected in any way with businesses described herein or otherwise introduced to [Blob] by [NFS] *within one (1) year from [the] date hereof*, that [Blob] will protect and guarantee NFS['s] rights to a commission.  [Blob] hereby agree[s] to pay [NFS] ten (10) percent of the total sales of the property if [Blob] interfere[s] in any way with [NFS]'s right to a commission from seller, and [Blob] would be personally liable for the payment of that commission.

Compl. ¶ 51 (emphasis added); Br. at 4; Opp. at 4.  The parties agree that the NDA was executed in November 2018, Compl. ¶ 51; that Blob was presented with the opportunity to purchase the Divine Franchises in July 2019, *id.* ¶ 52; and that no contract or sale regarding the Divine Franchises occurred until at least January 2020, D.E. 16-3, D.E. 16-4.

Blob argues that the NDA clause, properly construed, only applied until "one (1) year from [the] date hereof," and that the clause thus expired in November 2019.  Blob continues that because he did not sign any transaction to purchase the Divine Franchises until January 2020, and such transactions did not close until February 2021, he is not liable for breach of contract.  Plaintiff claims that Blob's interpretation of the contract term "misconstrues its plain language," Opp. at 9, and argues that even if Blob's interpretation is reasonable, it is equally reasonable that the NDA

6

clause hinges on when the introduction took place, meaning that Blob can be liable because the Divine Franchises were *introduced* to him within one year from the date of the contract, and he later purchased them.

In the Court's view, both parties' interpretations are reasonable. It is unclear whether the NDA's language was intended to encompass franchise purchases that were introduced to Blob within one year but purchased after one year. Presented with only the contract language at this stage—indeed, the parties have not even provided the Court with the entire NDA—the Court cannot say that the provision is free from ambiguity or that Plaintiff's interpretation of the NDA is unreasonable as a matter of law. *See Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. 08-3529, 2009 WL 2255727, at *7-8 (D.N.J. July 27, 2009) (holding that an ambiguity in a contract with a reasonable interpretation from the plaintiff "is sufficient to defeat [a] motion to dismiss"). This is particularly true because the time limitation directly follows the introduction language. Compl. ¶ 51 ("or otherwise introduced to me by [NFS] within one (1) year from [the] date hereof"). Thus, Blob's motion to dismiss is denied as to Count VII.

### B. Count VIII – Tortious Interference with Contract

To state a claim for tortious interference with contract, a plaintiff must allege

> (1) that plaintiff had a reasonable expectation of an economic benefit or advantage; (2) that defendant knew of plaintiff's expectancy; (3) that defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that but for defendant's wrongful interference, plaintiff would have realized the economic benefit; and (5) that plaintiff was injured as a result of defendant's conduct.

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 771 (D.N.J. 1995) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (1989)). "[T]he difference between tortious interference with prospective contractual relations and tortious

interference with performance of a contract is simply the existence of a contract, as opposed to plaintiff's reasonable expectation of an agreement." *Cost Cities*, 912 F. Supp. at 772 (citation omitted). "The gravamen of a claim for tortious interference is that the defendant's conduct was wrongful, thus requiring plaintiff to establish that defendant acted with malice." *Id.* (citations omitted). In this context, "malice" means "that the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown*, 563 A.2d at 37 (citation omitted).

Defendant relies on cases applying Pennsylvania law for the proposition that in order for conduct to be "wrongful" it "cannot be based on a mere breach of contract." Br. at 7-8; Reply at 2-3. Blob, however, does not indicate why Pennsylvania law would apply. Even if these cases did apply, Defendant's arguments demonstrate the possibility that Blob's alleged conduct falls outside of the NDA's provisions. At this stage, Plaintiff is entitled to plead in the alternative that if Blob's conduct is not a breach of contract, it constitutes tortious interference with the ELAs. Fed. R. Civ. P. 8(d)(2).

In his reply brief, Blob also cites to cases discussing New Jersey's economic loss doctrine. Reply at 3. But while that doctrine might "bar *recovery* where tort and fraud claims arise from the same facts as a breach of contract claim," it will "not bar a plaintiff from *pleading* such claims." *Sahoury v. Meredith Corp.*, No. 11-5180, 2012 WL 3185964, at *8 (D.N.J. Aug. 2, 2012) (emphasis added); *Prestige Cap. Fin. LLC v. CVS Pharmacy, Inc.*, No. 22-735, 2022 WL 17850261, at *6 (D.N.J. Dec. 22, 2022) ("At some point, [plaintiff] may be barred from simultaneously pursuing its tort and contract claims. At the motion to dismiss stage, however, I will generally respect a party's entitlement to plead claims in the alternative, and will not require it to elect one theory or the other.").

Plaintiff's allegations, however, fail to state a claim for a different reason. Blob argues that "Plaintiff has failed to plead any facts purported to show 'interference' by Blob with the ELAs." Br. at 7. The Court agrees. To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff alleges that Blob, "induced a breach of the Divine ELAs and/or interfered with the business relationships between NFS and the Divine Defendants" in a malicious manner, causing damages to NFS. Compl. ¶¶ 118-24. This conclusory recitation of the legal elements is insufficient. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). Plaintiff has not sufficiently alleged any specific conduct by Blob that interfered with Plaintiff's contractual relationships with the Divine Entities. Plaintiff merely alleges that "Patel abruptly told NFS to stop marketing the Divine Franchises" and thereafter "Patel sold all or some of the Divine Franchises and/or all or some of the real property owned by the Divine Entities to Blob." *Id.* ¶¶ 56, 59. Plaintiff does not adequately allege any conduct attributed to Blob that interfered with the Divine ELAs. Thus, Blob's motion to dismiss is granted as to Count VIII.

## IV.   CONCLUSION

For the foregoing reasons, Blob's motion to dismiss, D.E. 16, is **GRANTED in part** and **DENIED in part**. An appropriate Order accompanies this Opinion.

Dated: January 3, 2023

                                                       John Michael Vazquez, U.S.D.J.